## NORFOLK SHIPBUILDING & DRYDOCK CORP. *v.* GARRIS, ADMINISTRATRIX OF THE ESTATE OF GARRIS, DECEASED

No. 00–346.   Argued April 18, 2001—Decided June 4, 2001

*James T. Ferrini* argued the cause for petitioner. With him on the briefs were *Kimbley A. Kearney, Melinda S. Kollross, Robert M. Tata,* and *Carl D. Gray.*

*Patrick H. O'Donnell* argued the cause for respondent. With him on the brief was *John R. Crumpler, Jr.*

JUSTICE SCALIA delivered the opinion of the Court.

The question presented in this case is whether the negligent breach of a general maritime duty of care is actionable when it causes death, as it is when it causes injury.

I

According to the complaint that respondent filed in the United States District Court for the Eastern District of Virginia, her son, Christopher Garris, sustained injuries on April 8, 1997, that caused his death one day later. App. to Pet. for Cert. 53. The injuries were suffered while Garris was performing sandblasting work aboard the USNS *Maj. Stephen W. Pless* in the employ of Tidewater Temps, Inc., a subcontractor for Mid-Atlantic Coatings, Inc., which was in turn a subcontractor for petitioner Norfolk Shipbuilding & Drydock Corporation. And the injuries were caused, the complaint continued, by the negligence of petitioner and one of its other subcontractors, since dismissed from this case. Because the vessel was berthed in the navigable waters of the United States when Garris was injured, respondent invoked federal admiralty jurisdiction, U. S. Const., Art. III,

§2, cl. 1; 28 U. S. C. § 1333, and prayed for damages under general maritime law. She also asserted claims under the Virginia wrongful-death statute, Va. Code Ann. §§ 8.01–50 to 8.01–56 (2000).

The District Court dismissed the complaint for failure to state a federal claim, for the categorical reason that "no cause of action exists, under general maritime law, for death of a nonseaman in state territorial waters resulting from negligence." 1999 A. M. C. 769 (1998). The United States Court of Appeals for the Fourth Circuit reversed and remanded for further proceedings, explaining that although this Court had not yet recognized a maritime cause of action for wrongful death resulting from negligence, the principles contained in our decision in *Moragne* v. *States Marine Lines, Inc.*, 398 U. S. 375 (1970), made such an action appropriate. 210 F. 3d 209, 211 (2000). Judge Hall concurred in the judgment because, in her view, *Moragne* had itself recognized the action. 210 F. 3d, at 222–227. The Court of Appeals denied petitioner's suggestion for rehearing en banc, with two judges dissenting. 215 F. 3d 420 (2000). We granted certiorari. 531 U. S. 1050 (2000).

II

Three of four issues of general maritime law are settled, and the fourth is before us. It is settled that the general maritime law imposes duties to avoid unseaworthiness and negligence, see, *e. g.*, *Mitchell* v. *Trawler Racer, Inc.*, 362 U. S. 539, 549–550 (1960) (unseaworthiness); *Leathers* v. *Blessing*, 105 U. S. 626, 630 (1882) (negligence), that non-fatal injuries caused by the breach of either duty are compensable, see, *e. g.*, *Mahnich* v. *Southern S. S. Co.*, 321 U. S. 96, 102–103 (1944) (unseaworthiness); *Robins Dry Dock & Repair Co.* v. *Dahl*, 266 U. S. 449, 457 (1925) (negligence), and that death caused by breach of the duty of seaworthiness is also compensable, *Moragne* v. *States Marine Lines, Inc.*, *supra*, at 409. Before us is the question whether death

caused by negligence should, or must under direction of a federal statute, be treated differently.

## A

For more than 80 years, from 1886 until 1970, all four issues were considered resolved, though the third not in the manner we have just described. The governing rule then was the rule of *The Harrisburg,* 119 U. S. 199, 213 (1886): Although the general maritime law provides relief for injuries caused by the breach of maritime duties, it does not provide relief for wrongful death. *The Harrisburg* said that rule was compelled by the existence of the same rule at common law, *id.,* at 213–214—although it acknowledged, *id.,* at 205–212, that admiralty courts had held that damages for wrongful death were recoverable under maritime law, see also *Moragne, supra,* at 387–388 (listing cases).

In 1969, however, we granted certiorari in *Moragne* v. *States Marine Lines, Inc., supra,* for the express purpose of considering "whether *The Harrisburg* . . . should any longer be regarded as acceptable law." 398 U. S., at 375–376. We inquired whether the rule of *The Harrisburg* was defensible under either the general maritime law or the policy displayed in the maritime statutes Congress had since enacted, 398 U. S., at 379–393, whether those statutes preempted judicial action overruling *The Harrisburg,* 398 U. S., at 393–403, whether *stare decisis* required adherence to *The Harrisburg,* 398 U. S., at 403–405, and whether insuperable practical difficulties would accompany *The Harrisburg*'s overruling, 398 U. S., at 405–408. Answering every question no, we overruled the case and declared a new rule of maritime law: "We . . . hold that an action does lie under general maritime law for death caused by violation of maritime duties." *Id.,* at 409.

As we have noted in an earlier opinion, the wrongful-death rule of *Moragne* was not limited to any particular maritime duty, *Yamaha Motor Corp., U. S. A.* v. *Calhoun,* 516

U. S. 199, 214, n. 11 (1996) (dictum), but *Moragne*'s facts were limited to the duty of seaworthiness, and so the issue of wrongful death for negligence has remained technically open. We are able to find no rational basis, however, for distinguishing negligence from seaworthiness. It is no less a distinctively maritime duty than seaworthiness: The common-law duties of care have not been adopted and retained unmodified by admiralty, but have been adjusted to fit their maritime context, see, *e. g., Kermarec* v. *Compagnie Generale Transatlantique*, 358 U. S. 625, 630–632 (1959), and a century ago the maritime law exchanged the common law's rule of contributory negligence for one of comparative negligence, see, *e. g., The Max Morris*, 137 U. S. 1, 14–15 (1890); *Pope & Talbot, Inc.* v. *Hawn*, 346 U. S. 406, 408–409 (1953). Consequently the "tensions and discrepancies" in our precedent arising "from the necessity to accommodate state remedial statutes to exclusively maritime substantive concepts"—which ultimately drove this Court in *Moragne* to abandon *The Harrisburg*, see 398 U. S., at 401—were no less pronounced with maritime negligence than with unseaworthiness. In fact, both cases cited by *Moragne* to exemplify those discrepancies involved maritime *negligence*, see *ibid.* (citing *Hess* v. *United States*, 361 U. S. 314 (1960); *Goett* v. *Union Carbide Corp.*, 361 U. S. 340 (1960) *(per curiam)*); see also *Nelson* v. *United States*, 639 F. 2d 469, 473 (CA9 1980) (opinion by then-Judge Kennedy) (concluding that uniformity concerns required *Moragne*'s application to negligence). It is true, as petitioner observes, that we have held admiralty accommodation of state remedial statutes to be constitutionally permissible, see, *e. g., Western Fuel Co.* v. *Garcia*, 257 U. S. 233, 242 (1921); *The Tungus* v. *Skovgaard*, 358 U. S. 588, 594 (1959),[1] but that does not re-

---

[1] The issue addressed in *Yamaha Motor Corp., U. S. A.* v. *Calhoun*, 516 U. S. 199 (1996), whether state remedies may in some instances supplement a federal maritime remedy, is not presented by this case, where respondent is no longer pursuing state remedies. After the District

solve the issue here: whether *requiring* such an accommodation by refusing to recognize a federal remedy is preferable as a matter of maritime policy. We think it is not.

The choice-of-law anomaly occasioned by providing a federal remedy for injury but not death is no less strange when the duty breached is negligence than when it is seaworthiness. Of two victims injured at the same instant in the same location by the same negligence, only one would be covered by federal law, provided only that the other died of his injuries. See, *e. g., Byrd* v. *Napoleon Avenue Ferry Co.*, 125 F. Supp. 573, 578 (ED La. 1954) (in case involving single car accident on ferry, applying state negligence law to claim for deceased husband's wrongful death but federal maritime negligence law to claim for surviving wife's injuries), aff'd, 227 F. 2d 958 (CA5 1955) *(per curiam).* And cutting off the law's remedy at the death of the injured person is no less "a striking departure from the result dictated by elementary principles in the law of remedies," *Moragne* v. *States Marine Lines, Inc.*, 398 U. S., at 381, when the duty breached is negligence than when it is seaworthiness. "Where existing law imposes a primary duty, violations of which are compensable if they cause injury, nothing in ordinary notions of justice suggests that a violation should be nonactionable simply because it was serious enough to cause death." *Ibid.* Finally, the maritime policy favoring recovery for wrongful death that *Moragne* found implicit in federal statutory law cannot be limited to unseaworthiness, for both of the federal Acts on which *Moragne* relied permit recovery for negligence, see Jones Act, 46 U. S. C. App. § 688(a); Death on the High Seas Act (DOHSA), 46 U. S. C. App. § 761 *et seq.;* see also *Engel* v. *Davenport*, 271 U. S. 33, 36–37 (1926) (Jones Act). In sum, a negligent breach of a maritime duty of care being assumed

Court dismissed her state-law claim on jurisdictional grounds, respondent re-filed it in state court, where it was resolved against her. See Brief for Respondent 2, n. 1.

by the posture of this case,[2] no rational basis within the maritime law exists for denying respondent the recovery recognized by *Moragne* for the death of her son.

## B

Weightier arguments against recognizing a wrongful-death action for negligence may be found not within general maritime law but without, in the federal statutes that provide remedies for injuries and death suffered in admiralty. As we explained in *Miles* v. *Apex Marine Corp.*, 498 U. S. 19, 27 (1990), "[w]e no longer live in an era when seamen and their loved ones must look primarily to the courts as a source of substantive legal protection from injury and death; Congress . . . [has] legislated extensively in these areas." And, even in admiralty, "we have no authority to substitute our views for those expressed by Congress in a duly enacted statute." *Mobil Oil Corp.* v. *Higginbotham*, 436 U. S. 618, 626 (1978). Hence, when a statute resolves a particular issue, we have held that the general maritime law must comply with that resolution. See, *e. g.*, *Dooley* v. *Korean Air Lines Co.*, 524 U. S. 116, 123–124 (1998). We must therefore make careful study of the three statutes relevant here.

## 1

The Jones Act, 46 U. S. C. App. § 688(a), establishes a cause of action for negligence for injuries or death suffered in the course of employment, but only for seamen. See generally *Chandris, Inc.* v. *Latsis*, 515 U. S. 347 (1995) (describing test for seaman status). Respondent's son, who was not a seaman, was not covered by the Jones Act, and we have held that the Jones Act bears no implication for actions brought

---

[2] The District Court dismissed the case for the threshold reason that, regardless of a negligent breach, there could be no recovery. See *supra*, at 813. Petitioner therefore will be free to present its arguments regarding duty and breach on remand to the extent they have been preserved.

by nonseamen. See, *e. g., American Export Lines, Inc.* v. *Alvez,* 446 U. S. 274, 282–283 (1980). Moreover, even as to seamen, we have held that general maritime law may provide wrongful-death actions predicated on duties beyond those that the Jones Act imposes. See, *e. g., Miles* v. *Apex Marine Corp., supra,* at 28–30 (seaworthiness). The Jones Act does not preclude respondent's negligence action.

DOHSA creates wrongful-death actions for negligence and unseaworthiness, see *Moragne, supra,* at 395, but only by the personal representatives of people killed "beyond a marine league from the shore of any State," 46 U. S. C. App. §761. Respondent's son was killed in state territorial waters, where DOHSA expressly provides that its provisions "shall . . . [not] apply," §767. In *Moragne,* after discussing the anomalies that would result if DOHSA were interpreted to preclude federal maritime causes of action even where its terms do not apply, 398 U. S., at 395–396, we held that DOHSA "was not intended to preclude the availability of a remedy for wrongful death under general maritime law in situations not covered by the Act," *id.,* at 402. Or, "[t]o put it another way, . . . no intention appears that the Act have the effect of foreclosing any nonstatutory federal remedies that might be found appropriate to effectuate the policies of general maritime law." *Id.,* at 400. DOHSA therefore does not pre-empt respondent's negligence action.

Finally, the Longshore and Harbor Workers' Compensation Act (LHWCA), 44 Stat. 1424, as amended, 33 U. S. C. §901 *et seq.,* provides nonseaman maritime workers such as respondent's son, see §902(3) (defining covered employees), with no-fault workers' compensation claims (against their employer, §904(b)) and negligence claims (against the vessel, §905(b)) for injury and death. As to those two defendants, the LHWCA expressly pre-empts all other claims, §§905(a), (b); but cf. *Sun Ship, Inc.* v. *Pennsylvania,* 447 U. S. 715, 723–726 (1980) (holding some state workers' compensation claims against employer *not* pre-empted), but it expressly

*preserves* all claims against third parties, §§ 933(a), (i). And petitioner is a third party: It neither employed respondent's son nor owned the vessel on which he was killed.

Petitioner argues, however, that § 933's preservation-of-other-claims provisions express Congress's intent to reserve all other wrongful-death actions to the States. That argument cannot withstand our precedent, since we have consistently interpreted § 933 to preserve federal maritime claims as well as state claims, see, *e. g., Seas Shipping Co.* v. *Sieracki,* 328 U. S. 85, 100–102 (1946); *Cooper Stevedoring Co.* v. *Fritz Kopke, Inc.,* 417 U. S. 106, 113 (1974), including maritime negligence claims, see, *e. g., Pope & Talbot, Inc.* v. *Hawn,* 346 U. S., at 411–413 (upholding recovery for negligence under maritime law by longshoreman covered by the LHWCA). Petitioner's further contention—that the policy implicit in the 1972 amendments to the LHWCA bars a maritime action for wrongful death though the text of those amendments (which left § 933 unchanged) permits it—cannot succeed. We do not find, as petitioner does, an anti-maritime-wrongful-death policy implicit in the amendment to § 905(b), see 86 Stat. 1263, which eliminated covered workers' unseaworthiness claims against a vessel, see, *e. g., Bloomer* v. *Liberty Mut. Ins. Co.,* 445 U. S. 74, 83 (1980) ("Congress abolished the unseaworthiness remedy for longshoremen, recognized in *Seas Shipping Co.* v. *Sieracki,* 328 U. S. 85 (1946)"). That amendment was directed not at wrongful death in particular, but at unseaworthiness generally, see *Edmonds* v. *Compagnie Generale Transatlantique,* 443 U. S. 256, 262 (1979) ("Congress acted in 1972, among other things, to eliminate the shipowner's liability to the longshoreman for unseaworthiness . . .—in other words, to overrule *Sieracki*"). To the extent the amendment to § 905(b) reflects any policy relevant here, it is in expressly ratifying longshore and harbor workers' claims against the vessel for *negligence,* see *id.,* at 259–260. The LHWCA therefore does not preclude this negligence action for wrongful death.

2

Even beyond the express pre-emptive reach of federal maritime statutes, however, we have acknowledged that they contain a further prudential effect. "While there is an established and continuing tradition of federal common lawmaking in admiralty, that law is to be developed, insofar as possible, to harmonize with the enactments of Congress in the field." *American Dredging Co.* v. *Miller,* 510 U. S. 443, 455 (1994). Cf. *Grupo Mexicano de Desarrollo, S. A.* v. *Alliance Bond Fund, Inc.,* 527 U. S. 308, 332–333 (1999) (equitable lawmaking power of bankruptcy courts limited by statute). Because of Congress's extensive involvement in legislating causes of action for maritime personal injuries, it will be the better course, in many cases that assert new claims beyond what those statutes have seen fit to allow, to leave further development to Congress. The cause of action we recognize today, however, is new only in the most technical sense. The general maritime law has recognized the tort of negligence for more than a century, and it has been clear since *Moragne* that breaches of a maritime duty are actionable when they cause death, as when they cause injury. Congress's occupation of this field is not yet so extensive as to preclude us from recognizing what is already logically compelled by our precedents.

\* \* \*

The maritime cause of action that *Moragne* established for unseaworthiness is equally available for negligence.

We affirm the judgment of the Court of Appeals.

*It is so ordered.*

JUSTICE GINSBURG, with whom JUSTICE SOUTER and JUSTICE BREYER join, concurring in part.

I join all but Part II–B–2 of the Court's opinion.

Following the reasoning in *Moragne* v. *States Marine Lines, Inc.,* 398 U. S. 375 (1970), the Court today holds that

the maritime cause of action *Moragne* established for unseaworthiness is equally available for negligence. I agree with the Court's clear opinion with one reservation. In Part II–B–2, the Court counsels: "Because of Congress's extensive involvement in legislating causes of action for maritime personal injuries, it will be the better course, in many cases that assert new claims beyond what those statutes . . . allow, to leave further development to Congress." *Ante,* at 820. *Moragne* itself, however, tugs in the opposite direction. Inspecting the relevant legislation, the Court in *Moragne* found no measures counseling against the judicial elaboration of general maritime law there advanced. See 398 U. S., at 399–402, 409; see also *id.,* at 393 ("Where death is caused by the breach of a duty imposed by federal maritime law, Congress has established a policy favoring recovery in the absence of a legislative direction to except a particular class of cases."). In accord with *Moragne,* I see development of the law in admiralty as a shared venture in which "federal common lawmaking" does not stand still, but "harmonize[s] with the enactments of Congress in the field." *Ante,* at 820 (quoting *American Dredging Co.* v. *Miller,* 510 U. S. 443, 455 (1994)). I therefore do not join the Court's dictum.