Leslie Dyan Robinson **DALRYMPLE,** as personal representative of Stevan Rodger **DALRYMPLE,** Deceased, Plaintiff,

v.

## FAIRCHILD AIRCRAFT INCORPORATED, Defendant.

### Civil Action No. H–03–2328.

United States District Court, S.D. Texas, Houston Division.

July 25, 2008.

---

Floyd A. Wisner, Nolan Law Group, Chicago, IL, Howard L. Nations, Attorney at Law, Houston, TX, Jerome L. Skinner,

Nolan Law Group, Cincinnati, OH, for Plaintiff.

David T. Moran, Jackson Walker LLP, Dallas, TX, for Defendant.

## MEMORANDUM AND ORDER

EWING WERLEIN, JR., District Judge.

Pending is Defendant Fairchild Aircraft Incorporated's Motion for Summary Judgment (Document No. 65). After carefully considering the motion, response, and the applicable law, the Court concludes as follows.

### I. *Background*

This case arises out of an October 10, 2001, accident involving a non-scheduled international commercial flight operated by Flightline, S.L., a Spanish charter company. The plane crashed in the Mediterranean Sea approximately 30 to 50 miles off the coast of Spain, killing Stevan Rodger Dalrymple, and all nine other passengers and crew. Document No. 12 ¶¶ 2–4; Document No. 74 ex. B–1 at 1–2. Plaintiff is the personal representative of Dalrymple. A subsequent investigation of the accident conducted by the Spanish Civil Aviation Accident and Incident Investigation Commission ("CIAIAC") concluded that the plane had flown into a storm, may have been struck by lighting, and suffered a complete loss of electrical power. Document No. 74 ex. B–1 at 18.

The plane (the "Aircraft"), referred to variously as a "Merlin IV," Swearingen SA 226–AT, or Fairchild SA 226–AT, was designed and manufactured by Swearingen Aircraft Corporation and sold to the original purchaser on April 1, 1976. Document No. 65 exs. B at 2 ¶ 4, B–2. Swearingen later merged with Fairchild Aircraft Corporation ("FAC"). Document No. 74 ex. B–1 at 1. In 1988, a different Swearingen/Fair child airplane model crashed in Germany after it was struck by lightning and lost electrical power. Document No. 74 ex. B–1 at 12–13. In response to the accident, FAC on August 7, 1989 issued Service Bulletin 226–24–032 (the "Service Bulletin"), covering the SA 226–AT and other models of Fairchild aircraft. Document No. 65 ex. B at 3 ¶ 10. The Service Bulletin recommended removal of a particular battery diode in order "[t]o preclude de-energizing Battery Bus Relay if diode shorts." Document No. 65 ex. B–5. In 1990, FAC, while in bankruptcy, sold its assets to Fairchild Acquisition, Inc., which later changed its name to Fairchild Aircraft Incorporated ("Defendant"). Document No. 65 exs. B at 6 ¶ 17; B–11. That same year, the Federal Aviation Administration ("FAA") issued an Airworthiness Directive, effective August 15, 1990, that applied to the Fairchild SA 226–AT and other models. The directive mandated removal of the same diode identified in the Service Bulletin "within the next 100 hours time-in-service after the effective date of this AD," in order to "prevent an inadvertent deenergized battery bus relay, which could result in unrecoverable loss of the airplane's electrical power...." Document No. 65 ex. B–6 at 1–2.

■ According to the testimony of Jack D. Morgan, Defendant's expert and Chief of Aviation Safety and Airworthiness, Defendant delivered a copy of the Service Bulletin and a complete set of aircraft manuals to Flightline, as reflected in an invoice dated January 22, 2001—more than nine months before the accident. Document No. 65 exs. B at 3 ¶ 10, B–7. As Plaintiff's expert acknowledged during his deposition, no evidence suggests that Flightline removed the diode as recommended in the Service Bulletin and mandated by the FAA. Document No. 65 ex. A at 128:12–16. At the time of the accident,

Defendant held the type certificate [1] for the SA 226–AT. Document No. 74 exs. H, I. However, the uncontroverted evidence reflects that Defendant has never had possession, custody, or control of or performed any maintenance or repair on the Aircraft. Document No. 65 ex. B at 3 ¶ 7.

Plaintiff sued Flightline and was later granted leave to file an Amended Complaint adding Defendant and others. Document No. 2; Document No. 10; Document No. 12. In particular, Count IV of the Amended Complaint asserts a common-law negligence claim against Defendant, alleging that Defendant "provided support to operators of Model SA226AT aircraft including formulation and/or dissemination of design, engineering, operational and maintenance changes through such things as Service Bulletins, Service letters and Service Notes, and the formulation and/or dissemination of revisions and reissues of publications," and was "negligent and careless in its formulation and/or dissemination of design, engineering, operational and maintenance changes and/or dissemination of revisions and reissues of publications." Document No. 12 at 10–11 ¶¶ 6, 9.

By Order dated December 19, 2003, the Court stayed Plaintiff's claim against Defendant after Defendant filed a suggestion of bankruptcy. Document No. 16. Later, the entire action was transferred to the District of Connecticut and consolidated with related suits for pretrial proceedings. Document No. 18. Plaintiff settled all claims against Flightline, Document No. 25; Document No. 26, and the case was remanded to this Court, at which time the Court dismissed the case in light of Defendant's ongoing bankruptcy proceedings, Document No. 33; Document No. 46. In its dismissal order, the Court observed that "Defendant Fairchild is now the only Defendant remaining in the case." *Id.* The case was reinstated on April 9, 2007. Document No. 48.

Defendant now moves for summary judgment, contending, in pertinent part, that: (1) Defendant had no duty to warn of defects in the Aircraft; and (2) even if it had such a duty, Defendant fulfilled its duty to warn by sending a copy of the Service Bulletin to Flightline. Document No. 65–2 at 5–8; Document No. 76 at 2–4, 8–11.

## II. *Standard of Review*

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c). The moving party must "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials

---

1. The type certificate is a document issued by the FAA to a manufacturer if, after reviewing the plans, data and documentation relating to the design of a proposed aircraft, the FAA determines that the aircraft satisfies minimum safety standards. *See United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. 797, 104 S.Ct. 2755, 2757 n. 1, 81 L.Ed.2d 660 (1984); *Rehler v. Beech Aircraft Corp.*, 777 F.2d 1072, 1074 n. 1 (5th Cir. 1985); *see also* 49 U.S.C. § 44704(a); 14 C.F.R. §§ 21.11–21.53.

in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. *Id.* "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Id.*

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. *Kelley v. Price–Macemon, Inc.,* 992 F.2d 1408, 1413 (5th Cir.1993) (citing *Matsushita,* 106 S.Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Id.* Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Anderson,* 106 S.Ct. at 2513.

### III. *Discussion*

#### A. *Evidentiary Objections*

■ Plaintiff moves to strike the affidavit of Defendant's expert, Jack Morgan, in its entirety on the grounds that portions of Morgan's testimony contain impermissible legal conclusions. Document No. 74–11 at 23–24. However, it is appropriate to strike only the inadmissible portions of a challenged affidavit, not the entire affidavit. *See Salas v. Carpenter,* 980 F.2d 299, 304 (5th Cir.1992). Plaintiff's specific objections are SUSTAINED to the following portions of Morgan's Affidavit, to wit: in

¶ 9, the first and fourth sentences; in ¶ 10, the first sentence; in ¶ 11, the first two sentences; in ¶ 12, the second sentence; in ¶ 13, Morgan's opinion that Flightline "was obligated to comply with Airworthiness Directive AD 90–03–29R1"; and ¶ 22, Morgan's opinion that "[Defendant] did not expressly assume any liabilities for the claims of Plaintiff in this lawsuit or any claims arising out of any allegedly defective aircraft in the Liability Assumption Agreement." Document No. 65 ex. B. All of these portions to which objections are sustained are therefore STRICKEN, and the motion to strike is otherwise DENIED.

#### B. *Death on the High Seas Act, 46 U.S.C. § 30301, et seq.*

■ Defendant contends, and Plaintiff does not dispute, that Plaintiff's negligence claim arises under the Death on the High Seas Act ("DOHSA"), 46 U.S.C. § 30301, *et seq.* Document No. 65–2 at 4–5. The DOHSA provides the exclusive remedy for wrongful deaths "occurring on the high seas beyond 3 nautical miles from the shore of the United States...." 46 U.S.C. § 30302; *see also Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 106 S.Ct. 2485, 2493–2500, 91 L.Ed.2d 174 (1986) (holding that the DOHSA preempts state wrongful death statutes). The DOHSA "has been construed to confer admiralty jurisdiction over claims arising out of airplane crashes on the high seas though the negligence alleged to have caused the crash occurred on land." *In re Dearborn Marine Serv., Inc.,* 499 F.2d 263, 272 n. 17 (5th Cir.1974). Additionally, the DOHSA extends to incidents occurring in the territorial waters of a foreign country, whether involving airplanes or seagoing vessels. *See, e.g., Sanchez v. Loffland Bros. Co.,* 626 F.2d 1228, 1230 & n. 4 (5th Cir.1980) (per curiam) (observing that the DOHSA has been ap-

plied "when the cause of action arises outside of United States territorial waters and within the territorial waters of a foreign country"); *see also Howard v. Crystal Cruises, Inc.,* 41 F.3d 527, 528–30 (9th Cir.1994) (citing *Sanchez* and other cases and affirming the district court's application of the DOHSA to injuries sustained by a cruise ship passenger in Mexican waters that later resulted in death); *Baker v. Bell Helicopter/Textron, Inc.,* 907 F.Supp. 1007, 1009–10 (N.D.Tex.1995) (construing claims pled under Texas and Australia law as DOHSA wrongful death claims, when the subject helicopter crashed 5.5 kilometers off the coast of Australia); *Mancuso v. Kimex, Inc.,* 484 F.Supp. 453, 454–55 (S.D.Fla.1980) (plane crash in Jamaican waters).

■ The Aircraft in this case crashed in the Mediterranean Sea approximately 30 to 50 miles off the coast of Spain. Document No. 65 ex. A at 21: 10–15. Because the accident occurred more than 3 nautical miles off the coast of the United States, Plaintiff's negligence claim is governed by the DOHSA. *See, e.g., Norfolk Shipbuilding & Drydock Corp. v. Garris,* 532 U.S. 811, 121 S.Ct. 1927, 1932, 150 L.Ed.2d 34 (2001) (observing that the DOHSA creates a wrongful-death action for negligence). When, as here, a negligence claim sounds in admiralty, courts must apply federal common law, referencing state law only when there is no admiralty rule on point. *See Ost–West–Handel Bruno Bischoff GmbH v. Project Asia Line, Inc.,* 160 F.3d 170, 174 (4th Cir. 1998). In particular, the Fifth Circuit has frequently relied on the Restatement (Second) of Torts for statements of common law principles relevant to admiralty cases. *See, e.g., Marastro Compania Naviera, S.A. v. Canadian Maritime Carriers, Ltd.,* 959 F.2d 49, 53 (5th Cir.1992) (holding "that general common law and in particu-

lar the Restatement (Second) of Torts should control to determine the law of maritime trespass, in order to promote uniformity in general maritime law"); *Hardy v. Gulf Oil Corp.,* 949 F.2d 826, 835 (5th Cir.1992) (referring to the Restatement as "a common source of authority in maritime personal injury cases"); *Port Ship Serv., Inc. v. Int'l Ship Mgmt. & Agencies Serv., Inc.,* 800 F.2d 1418, 1420 (5th Cir.1986) (noting the Fifth Circuit's frequent references to the Restatement for common law principles of agency).

## C. Duty to Warn

■ Defendant contends, *inter alia,* that it "had no duty to warn Plaintiff or the operator of the Aircraft of any alleged deficiencies concerning a plane it did not design, make, sell or service," and that even if it did, Defendant satisfied its duty to warn by sending to Flightline a copy of the Service Bulletin months before the accident. Document No. 65–2 at 9–12. Plaintiff, however, asserts several bases for an alleged duty to warn, each of which is discussed below.

### 1. Reporting defects to the FAA, 14 C.F.R. § 21.3

According to Plaintiff, Defendant's duty to warn derives in part from a federal regulation that imposes an "affirmative duty" on a "type certificate holder" to "report that [the] aircraft was susceptible to electric system failures in the event of a lightning strike." Document No. 74–11 at 8–9. The regulation cited by-Plaintiff provides, in pertinent part:

the holder of a Type Certificate (including a Supplemental Type Certificate), ... shall report any failure, malfunction, or defect in any product, part, process, or article *manufactured by it* that it determines has resulted in any of the

occurrences listed in paragraph (c) of this section.

14 C.F.R. § 21.3(a) (emphasis added). Such a report must be "made to the Aircraft Certification Office in the region in which the person required to make the report is located within 24 hours after it has determined that the failure, malfunction, or defect required to be reported has occurred." § 21.3(e)(1).

By its plain terms, § 21.3(a) applies only to a type certificate holder that *also* manufactured the subject product or part that is determined to be defective. Although Defendant held the type certificate for the SA 226–AT at the time of the accident, it is undisputed that Swearingen, not Defendant, manufactured the aircraft. The reporting requirement in § 21.3(a) does not apply to a non-manufacturer such as Defendant. *Cf. Hasler Aviation, L.L.C. v. Aircenter, Inc.*, No. 1:06–CV–180, 2007 WL 2263171, at *5 (E.D.Tenn. Aug. 3, 2007) (holding that § 21.3(a) plainly does not apply to a type certificate holder who did not manufacture the subject plane). Thus, even assuming that violation of an FAA regulation can form the basis of a negligence claim under the DOHSA, Defendant's alleged duty to warn cannot be based on § 21.3(a).

### 2. Negligence

■ Plaintiff also asserts that Defendant failed to provide Flightline with the Service Bulletin or Airworthiness Directive advising removal of the battery diode, thereby breaching a "duty to inform the operator of defects to the electrical system." [2] Document No. 74–11 at 10–11. The Service Bulletin issued by FAC in August, 1989 applied to the Fairchild SA 226–AT and others, and recommended removal of a specific battery diode to prevent de-energizing of the battery if the diode were to short circuit. Document No. 65 ex. B–5. Jack D. Morgan, Defendant's Chief of Aviation Safety and Airworthiness, states in his affidavit that Defendant delivered a copy of the Service Bulletin along with a set of aircraft manuals to Flightline, S.L. sometime before the accident. Document No. 65 exs. B at 3 ¶ 10, B–7. Morgan's testimony is corroborated by a copy of an invoice to Flightline dated January 21, 2001—more than nine months before the accident—reflecting a charge of $2,231.95 for "non-inventory sales manuals," including the "annual revision service for SA226." *Id.* ex. B–7. Plaintiff presents no evidence to controvert Morgan's testimony that the Service Bulletin was provided to Flightline. Therefore, even assuming that a non-manufacturer such as Defendant has a common-law, post-sale duty to warn of potential product defects, the uncontroverted evidence is that Defendant satisfied that duty by warning Flightline that the diode should be removed.

**2.** Plaintiff digresses in her Response to allude to some other, unspecified act of negligence by Defendant separate and apart from an alleged breach of a duty to warn. *See, e.g.,* Document No. 74–11 at 11 (contending that Defendant was "negligen[t] in endeavoring to respond to the risk of electrical failure and ultimately failing to solve the problem"). However, the negligence claim as pled in the Amended Complaint relates exclusively to Defendant's provision of support to operators of SA 226–AT aircraft by (1) formulating and/or disseminating design, engineering, operation-

al and maintenance changes; and/or (2) disseminating revisions or reissues of publications. Document No. 12 at 10–11. Plaintiff's theories of recovery are therefore limited to those alleged in the Amended Complaint, which at most encompass negligent provision of and, arguably, failure to provide information to operators. *See, e.g., Knight v. Houston Cmty. Coll.*, Civil Action No. H–05–0319, 2006 WL 3227329, at *4 n. 4 (S.D.Tex. Nov. 3, 2006) ("Plaintiff may not raise a new claim in a response to a motion for summary judgment. . . .").

■ Plaintiff also contends that Defendant "was negligent in undertaking to revise and disseminate the service bulletin calling for the removal of the battery diode which was used to supplement the service information manual for the aircraft." Document No. 74 at 10. Under general tort principles:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the reliance of the other or the third person upon the undertaking.

RESTATEMENT (SECOND) OF TORTS § 324A (1965); see also, e.g., Graham v. Milky Way Barge, 923 F.2d 1100, 1109 (5th Cir. 1991) (analyzing § 324A in the context of a negligence claim asserted under general maritime law, the DOHSA, and/or Louisiana state law involving an insurer's alleged negligent inspection of a ship that later capsized).

Plaintiff argues that even if Defendant sent Flightline the Service Bulletin advising that the battery diode be removed, the risk of electrical failure to the plane in the event of a lightning strike "most likely" persisted. Id. In effect, Plaintiff suggests that Defendant unreasonably failed to advise Flightline of other potential defects in the SA 226–AT. However, Plaintiff wholly fails to articulate, let alone demonstrate, what additional warnings Defendant reasonably should have provided to Flightline. Notably, aside from the risk of short circuit if the diode were not removed, Plaintiff's own expert could not identify any defects in the aircraft that rendered it vulnerable to electrical failure in the event of a lightning strike, or any changes that could or should have been made to alleviate that risk. See Document No. 65 ex. A at 173:10–23. Nor has Plaintiff submitted any evidence that Defendant was aware of any potential vulnerabilities in the SA 226–AT other than that addressed in the Service Bulletin it sent to Flightline. With no evidence whatsoever to raise a fact issue on whether or how the actual warning Defendant provided to Flightline was inadequate, Plaintiff cannot establish that Defendant breached a duty of reasonable care.

■ To prevail on a negligent undertaking theory, Plaintiff must also prove that Flightline or Plaintiff detrimentally relied on the Service Bulletin, or that the recommendations in the Service Bulletin increased the risk of harm. See RESTATEMENT § 324A. Plaintiff's expert, however, admitted that there is no evidence that Flightline removed the diode, as was recommended in the Service Bulletin and was later mandated by the FAA. Document No. 65 ex. A at 128:12–16. Without proof that Flightline removed the diode in accordance with the Service Bulletin, Plaintiff cannot demonstrate detrimental reliance on the part of Flightline. There is also no evidence suggesting that Plaintiff relied on or, indeed, was even aware of the Service Bulletin.

■ Additionally, Plaintiff submitted no evidence indicating that compliance with the recommendation in the Service Bulletin would have increased the risk of harm. The FAA, an agency entrusted with the responsibility of regulating airplane safety, impliedly endorsed that recommendation by mandating removal of the same diode on the SA 226–AT and other models of Swearingen aircraft "[t]o prevent an inadvertent deenergized battery

bus relay, which could result in unrecoverable loss of the airplane's electrical power...." Document No. 65 ex. B–6. If anything, the FAA's effective adoption of the remedy prescribed in the Service Bulletin suggests that compliance with the Bulletin would have *reduced,* not increased, the risk of danger. In sum, even if the theory of negligent undertaking is otherwise cognizable under the DOHSA, the absence of evidence substantiating detrimental reliance on or increased risk resulting from the warnings provided by Defendant, or that Defendant's conduct was unreasonable, defeats Plaintiff's negligent undertaking claim as a matter of law.

Because Plaintiff has failed to raise any genuine issue of material fact that Defendant breached any potentially recognized duty to Plaintiff, her negligence claim under the DOHSA fails as a matter of law. Accordingly, Defendant's motion for summary judgment is granted, and it is therefore unnecessary to address Defendant's additional arguments.

### IV. *Order*

It is therefore ORDERED that Defendant Fairchild Aircraft, Inc.'s Motion for Summary Judgment (Document No. 65) is GRANTED, and Plaintiff Leslie Dyan Robinson Dalrymple's claim against Defendant is DISMISSED on the merits.

The Clerk will enter this Order, providing a correct copy to all counsel of record.