MARTIN, Circuit Judge:
This case arises from a fatal accident aboard a cargo ship called the M/V Seaboard Spirit. Ossie Hyman was a 47-year-old longshoreman who worked for a stevedore, which is a company that employs longshoremen to load and unload ships. Mr. Hyman was helping to unload the Seaboard Spirit when a shipping container slid sideways. Tragically, the container crushed Mr. Hyman to death. The owners of the Seaboard Spirit brought an action seeking exoneration from liability arising out of this accident. On the other hand, the personal representatives of Mr. Hyman’s estate filed a negligence claim against the owners of the Seaboard Spirit under the Longshoremen and Harbor Worker’s Compensation Act (“LHWCA”).
The issue on appeal concerns the owners’ liability under the LHWCA. We must decide whether the District Court correctly limited the effect of its judgment to allow Mr. Hyman’s personal representatives to bring a new set of negligence claims against the ship owners. After careful consideration, and with the benefit of oral argument, we conclude that the District Court erred in holding that its ruling had no effect on the ship owners’ liability as a stevedore.
I. BACKGROUND AND PROCEDURAL HISTORY
A. SEABOARD SPIRIT IS LOADED
The Seaboard Spirit is a “roll-on/roll-off’ vessel. This means that it carries cargo containers secured on wheeled chassis that facilitate loading and unloading. On May 3, 2011, the Seaboard Spirit was loaded in Nassau, Bahamas for a voyage to Miami, Florida. A third-party stevedore brought the cargo aboard in Nassau. But once the cargo was aboard, the Seaboard Spirit’s crew secured it.
The relevant piece of cargo in this case is a blue eight-by-twenty foot container- and-chassis combination (similar to what a tractor-trailer tows). This “trailer,” as it’s known in the industry, was secured on an internal ramp connecting two parts of the ship. It was held in place by lashing chains and a “mule” (a tractor used to move the trailer). One of the lashing chains may have been too tight.
B. THE ACCIDENT
On May 4, 2011, the Seaboard Spirit arrived in the Port of Miami, and a steve-doring company, Eller-ITO, took over unloading operations. Mr. Hyman was a longshoreman employed by Eller-ITO. When Eller-ITO’s longshoremen were attempting to remove the blue trailer from the internal ramp, Mr. Hyman was acting as a “striker.” This means that he was in *937 charge of safety, and his responsibilities included checking the cargo, ensuring that all securing gear had been removed, and telling the mule driver when to drive.
Mr. Hyman walked up the ramp next to the trailer and entered a “pinch point,” which is a space between a fixed object (in this case, the bulkhead, which is the wall of the ship) and a moving object (here, the trailer). Several witnesses said Mr. Hyman didn’t need to enter that pinch point and disagreed with his decision to do so. When he entered the pinch point, the tight lashing chain was still attached to the trailer. Mr. Hyman removed the wheel chocks and then gave a hand signal to the mule driver that the driver interpreted as an “okay” to drive. Two witnesses also testified that Mr. Hyman verbally told the mule driver to drive.
Because the trailer was still lashed down when the mule drove forward, it shifted to its side and pinned Mr. Hyman against the bulkhead. Mr. Hyman was crushed to death.
C. THE CURRENT CASE
After the accident, the owners of the Seaboard Spirit—Seaboard Spirit Ltd., Seaboard Marine Ltd., and Seaboard Ship Management, Inc. (collectively, “Seaboard”)—filed a petition under the Limitation of Liability Act, 46 U.S.C. § 30501 et seq., asking for exoneration from or limitation of liability. They argued that they were not at fault for Mr. Hyman’s death. The personal representatives of Mr. Hy-man’s estate—Antwon Hyman and Sieshia Neshay Reid (collectively, “the Claimants”)—responded by arguing against exoneration and bringing claims against Seaboard under § 905(b) and § 933 of the LHWCA. 33 U.S.C. §§ 905(b), 933. Specifically, the Claimants alleged that Seaboard breached the three duties that § 905(b) imposes on vessel owners.
The parties both filed motions for summary judgment. In Claimants’ motion, they argued for the first time that Seaboard was subject to duties beyond the three § 905(b) duties that apply to vessel owners. They asserted that because the Seaboard Spirit’s crew secured cargo in the Bahamas, Seaboard also acted as, and assumed the duties of, an onloading stevedore. The District Court granted Seaboard’s motion and denied the Claimants’ motion. In doing so, the District Court rejected the Claimants’ argument that Seaboard had duties beyond the three owner-specific duties imposed by § 905(b) and concluded that Seaboard had not breached any of those three duties as a matter of law.
The Claimants then filed a Rule 59(e) motion to alter or amend the summary judgment order, arguing again that Seaboard should be subject to more than the three owner-specific § 905(b) duties. The court reversed its earlier position and accepted this argument in a May 8, 2014 order partially granting the Claimants’ Rule 59(e) motion. It found that Seaboard “acted as both onloading stevedore and the vessel owner,” and held that Seaboard should not be allowed to escape liability for its actions as an onloading stevedore merely because of its status as vessel owner. It noted that stevedores are best-situated to prevent injuries. The District Court then held that the Limitation of Liability Act could limit Seaboard’s liability for its actions as vessel owner only, so “any ruling” in this case “does not limit any causes of action that Claimants may bring against [Seaboard] in their roles as onloading stevedores.” It also allowed one of the Claimants’ three § 905(b) claims to go to trial.
After a three-day bench trial, the District Court ruled against the Claimants on their only § 905(b) claim. The court rejected each of the Claimants’ theories of liabil *938 ity, finding, as fact, that none of Seaboard’s challenged actions—stowing the chassis on the ramp, over-tightening the lashing chain, and failing to use wheel chocks—proximately caused Mr. Hyman’s death. .Instead, the court found that “the proximate cause of Mr. Hyman’s death was.... Mr. Hyman’s decision to position himself in the pinch point when giving [the mule driver] the order to move forward—a decision which even his fellow longshoremen found inexplicable.” Alternatively, the court found that if Mr. Hyman didn’t tell the mule driver to move forward, then “it was some miscommunication between [the mule driver] and Mr. Hyman, coupled with Mr. Hyman’s position in the pinch point, that caused Mr. Hyman’s death.” But the District Court also reiterated its prior holding that its ruling did not limit any future causes of action brought against Seaboard in its role as onloading stevedore. The District Court entered final judgment against the Claimants on June 8, 2015. Both parties appealed.
II. STANDARDS OF REVIEW
We review the district court’s findings of fact after a bench trial in a maritime case for clear error, and we review its conclusions of law de novo. Sea Byte, Inc. v. Hudson Marine Mgmt. Servs., Inc., 565 F.3d 1293, 1298 (11th Cir. 2009).
III. DISCUSSION
A. JURISDICTIONAL ISSUE
Seaboard challenges the District Court’s ruling that its resolution of this case did not limit any causes of action that the Claimants may bring against Seaboard in its role as onloading stevedore. The Claimants argue that we lack jurisdiction over this issue because Seaboard did not file its notice of appeal in time. A party must file a notice of appeal within thirty days after the District Court enters the judgment or order from which the party wants to appeal. Fed. R. App. P. 4(a)(1)(A). The Claimants say that Seaboard did not file its notice of appeal until over one year after the District Court first ruled in its May 8, 2014 order.
Contrary to the Claimants’ argument, Seaboard timely filed its notice of appeal because the District Court’s May 8, 2014 order was not a final judgment. A trial court’s order is appealable “only if it is final or otherwise permitted by the Federal Rules of Civil Procedure.” Virgo v. Riviera Beach Assocs., Ltd., 30 F.3d 1350, 1356 (11th Cir; 1994). “A judgment is final if it disposes of all of the claims with regard to all of the parties.” Id. The May 8, 2014 order was not a final judgment—it did not resolve all claims against Seaboard. Rather, the order allowed one of those claims to go to trial. The District Court did not enter a final judgment resolving all claims against all parties until June 8, 2015, and Seaboard filed its notice of appeal twenty-three days later, on July 1, 2015. Because Seaboard filed its notice of appeal within thirty days of the final judgment, we have jurisdiction to hear their arguments on appeal.
The Claimants assert that 28 U.S.C. § 1292(a)(3) required Seaboard to file an interlocutory appeal of the District Court’s May 8, 2014 order, even though it wasn’t a final judgment. To the contrary, § 1292(a)(3) permits, but does not require, interlocutory appeals in maritime cases when the court “determines] the rights and liabilities of the parties.” Even assuming that the May 8, 2014 order was such a determination, Seaboard was at liberty under § 1292(a)(3) to wait until a final judgment to appeal. See Caradelis v. Refineria Panama, S.A., 384 F.2d 589, 591 n.1 (5th Cir. 1967) (explaining that a party that declined to appeal an interlocutory order *939 can still appeal the final determination of the case because “[a]n interlocutory appeal [under § 1292(a)(3) ] is permissive rather than mandatory”).[1]
B. CLAIMS AGAINST SEABOARD AS STEVEDORE
Even though the District Court ruled in favor of Seaboard as an owner, it explicitly left open the possibility for Claimants to bring a separate set of general maritime law negligence claims against Seaboard as an onloading stevedore under 33 U.S.C. § 933. Seaboard argues that the District Court was wrong to limit the effect of its judgment in this way. For their part, the Claimants argue that the District Court correctly limited the scope of its ruling, but should not have made any sort of finding as to whether Mr. Hyman was the proximate cause of his own death.[2] The parties’ arguments highlight the tension between the District Court’s proximate cause finding and its ruling that the Claimants may still pursue a negligence action against Seaboard in its role as a stevedore. It is hard to imagine what kind of negligence case the Claimants could bring if Mr. Hyman was the proximate cause of the accident.
We are aware that the parties dispute the threshold issue of whether Seaboard acted as an onloading stevedore by having the Seaboard Spirit’s crew secure the cargo in the Bahamas. But we need not decide that issue here. Even assuming Seaboard acted as both onloading stevedore and vessel owner, we conclude that the District Court erred in holding that the Claimants could sue Seaboard under both § 905(b) and § 933. These Claimants are limited to suing Seaboard under § 905(b).
We rely on precedent interpreting the LHWCA, and we discuss that precedent here. Because Seaboard prevails on its legal argument, the Claimants’ request that we reverse'the District Court for reaching the issue of the proximate cause of Mr. Hyman’s death becomes irrelevant. Our ruling (either way) on that issue will not impact the outcome of this appeal, so we choose not to rule on it.
1. Background on the LHWCA
The LHWCA establishes a federal workers’ compensation program for longshoremen and their families. See Howlett v. Birkdale Shipping Co., S.A., 512 U.S. 92, 96, 114 S.Ct. 2057, 2062, 129 L.Ed.2d 78 (1994). When a longshoreman sustains an injury, the “longshoreman’s employer—in most instances, an independent stevedore—must pay the statutory benefits regardless of fault, but is shielded from any further liability to the longshoreman.” Id. (citing 33 U.S.C. §§ 904, 905(a)) (citation omitted).
In addition to receiving statutory compensation from his or her employer, an injured longshoreman can seek damages from a third-party vessel owner under § 905(b)[3] of the LHWCA if that vessel *940 owner negligently caused the injuries. See id. at 96-97, 114 S.Ct. at 2062. This provision was enacted in 1972 to limit a longshoreman’s right to sue a shipowner and shift more responsibility for compensating an injured longshoreman to “the party best able to prevent injuries: the stevedore-employer.” Id. at 97, 114 S.Ct. at 2063. So as it stands today, the LHWCA holds an injured longshoreman’s stevedore-employer strictly liable for a capped amount of workers’ compensation benefits, while it holds a vessel owner liable only for injuries caused by that owner’s own negligence.
The Supreme Court has interpreted § 906(b) to impose three separate duties on the vessel owner. See Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 166-68, 101 S.Ct. 1614, 1622-23, 68 L.Ed.2d 1 (1981). The first, called the “turnover duty,” “relates to the condition of the ship upon the commencement of stevedoring operations.” Howlett, 512 U.S. at 98, 114 S.Ct. at 2063. The second, called the “active-control duty,” “provides that a shipowner must exercise reasonable care to prevent injuries to longshoremen in areas that remain under the ‘active control of the vessel.’ ” Id (quoting Scindia, 451 U.S. at 167, 101 S.Ct. at 1622). The third, called the “duty to intervene,” “concerns the vessel’s obligations with regard to cargo operations in areas under the principal control of the independent stevedore.” Id.
When it comes to suing vessel owners for negligence, “the LHWCA expressly pre-empts all other claims, but it expressly preserves all claims against [non-owner] third parties.” Norfolk Shipbuilding & Drydock Corp. v. Garris, 532 U.S. 811, 818-19, 121 S.Ct. 1927, 1932, 150 L.Ed.2d 34 (2001) (citations omitted); see also 33 U.S.C. § 905(b) (“The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.”).
2. Crew Members Acting as Longshoremen
Seaboard argues that because § 905(b), by its own terms, provides the exclusive means of relief against vessel owners, the District Court can’t properly preserve general maritime law claims against Seaboard under § 933. The Claimants counter that § 905(b) does not limit the claims that a longshoreman may bring against a vessel owner who acts as a stevedore. Claimants say this type of claim is allowed by § 933.
We recognize that vessel owners can act as stevedores by having them crews handle tasks typically done by longshoremen. We will assume here that Seaboard acted as a stevedore in this way. Even making that assumption, however, we know of no ease that allows a vessel owner to be sued under both § 905(b), as a vessel owner, and § 933, as a stevedore. Instead, when crew members have negligently mishandled tasks normally performed by longshoremen, and that negligence causes injury to other longshoremen, courts have held the vessel owners to the heightened standard of care of a stevedore. But they have done so within the longshoremen’s § 905(b) actions against the owners.
For example, in Ollestad v. Greenville S.S. Corp., 738 F.2d 1049 (9th Cir. 1984), the Ninth Circuit considered a § 905(b) “turnover duty” claim against a third-parr ty vessel owner. See id. at 1050-51. The owner’s crew had moved equipment around on the ship before turning it over *941 to the stevedore, and this was a “job normally performed by longshoremen.” Id. at 1050. Later, the plaintiff tripped over the equipment and sustained injuries. Id On appeal, the court reasoned that the owner should be held to the same standard of care as a stevedore, even in the § 905(b) action, because the crew performed “work normally done by longshoremen.” Id. at 1052.
The Second Circuit addressed a similar circumstance in Fanetti v. Hellenic Lines Ltd., 678 F.2d 424 (2d Cir. 1982). Like in Ollestad, the shipowner in Fanetti “acted as its own stevedore.” Id at 426. The Fanetti panel explained that although a shipowner is free to act as its own stevedore in order to save money, the extra cost of hiring an independent stevedore carries with it the benefit of protection from liability for damages arising out of negligent stevedoring conduct. Id. at 428. Thus, a shipowner who refuses to hire an independent stevedore “cannot save the premium and still claim the protection.” Id On that basis, the panel decided that the shipowner was not entitled to a jury instruction holding it to the lower standard of care of a shipowner. Id. at 428-30.
The Claimants here rely on Ollestad and Fanetti to support the District Court’s decision leaving them free to bring another action against Seaboard. However, these two cases do not stand for the proposition that Seaboard, though victorious in the § 905(b) action, can now be subject to a new § 933 action as a stevedore. Instead, Ollestad and Fanetti tell us that Seaboard should have been held to the higher standard of a stevedore in the § 905(b) action.[4]
Because there is no precedent for subjecting a vessel owner to separate and independent liability under both § 905(b) and § 933, we decline to do so here. While there is case law suggesting that Seaboard should have been held to a stevedore’s standard of care in the § 905(b) action below, the Claimants do not argue here that the District Court should be reversed for applying the wrong standard of care to their § 905(b) claims. Claimants have therefore abandoned that argument. See Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) (per curiam) (stating that issues not briefed are deemed abandoned).
3. Dual-Capacity Employment
In concluding that Seaboard could be subject to liability under both § 905(b), as an owner, and § 933, as a stevedore, the District Court relied on so-called dual-capacity employment cases. The Claimants also rely on these cases on appeal. In each of these dual-capacity employment cases, the injured longshoreman suing the vessel owner was employed not by a third-party stevedore, but directly by the vessel owner. See, e.g., Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 528, 103 S.Ct. 2541, 2546, 76 L.Ed.2d 768 (1983).
*942 The dual-capacity employment cases provide a narrow solution to a specific problem that comes up when a vessel owner directly employs longshoremen. As we’ve explained, the LHWCA’s compensation scheme envisions a regime in which an injured longshoreman’s stevedore-employer is strictly liable for workers’ compensation benefits, while the vessel owner is liable only for injuries caused by the owner’s negligence. See id. at 528-30, 103 S.Ct. at 2546-47. But when a vessel owner directly employs longshoremen, the vessel owner and the stevedore-employer are the same entity. In this circumstance, the LHWCA does not clearly address what longshoremen should recover from their employers when accidents occur. To prevent longshoremen from getting shortchanged simply because they’re employed by a vessel owner and not by a third-party stevedore, the Supreme Court interprets the LHWCA to provide that longshoremen who are employed by vessel owners retain their full statutory rights to both workers’ compensation benefits and, if proven, negligence liability. See id. at 528-32, 103 S.Ct. at 2546-48. Thus, an injured longshoreman may recover from a vessel owner both as an owner (for negligence) and as a stevedore-employer (for workers’ compensation). See id.; Gravatt v. City of New York, 226 F.3d 108, 120 (2d Cir. 2000) (“Insofar as the employer-vessel is negligent in its stevedore-employer capacity, it is immune from suit under section 905(a). However, insofar as it is negligent in its vessel capacity, it will be liable under section 905(b) in the same manner as a third party.”).
But this case is not a dual-capacity employment case. Mr. Hyman was employed by a third-party stevedore (Eller-ITO), rather than a vessel owner. And this is the standard arrangement contemplated by the LHWCA. Thus, we decline to apply the dual-capacity employment cases to uphold the District Court’s conclusion that Seaboard can be subject to separate, independent liability under § 905(b) and § 933.
IV. CONCLUSION
. We reverse the District Court’s ruling that its resolution of this case does not foreclose causes of action that the Claimants may bring against Seaboard in its role as an onloading stevedore. In light of this ruling, the Claimants’ cross-appeal on the District Court’s finding that Mr. Hyman was the proximate cause of the accident is moot, so we do not decide it.[5]
REVERSED.

. In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. Id. at 1209.

. To be clear, the Claimants do not critique the analysis the District Court used in arriving at this ruling. Rather, their argument is that the District Court simply should not have reached the issue.

.Section 905(b) provides, in relevant part, that:
In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person ... may bring an action against such vessel as a third party.... If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the *940 vessel.... The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter. 33 U.S.C. § 905(b).

. The Claimants also argue that when a vessel owner acts as its own stevedore, the owner is in the best position to prevent injuries arising from stevedoring operations and should therefore bear the risk of those injuries. The Second Circuit took a similar stance in Fanet-⅛ reasoning that shipowners who direct their non-expert crew members to perform steve-doring tasks should not be shielded from liability for damages arising out of their negligent stevedoring conduct. See 678 F.2d at 428. However, the Second Circuit’s solution was not to subject the shipowner to liability under both § 905(b) and § 933. Instead, the Fanetti panel chose to hold the shipowner to the higher standard of care of a stevedore in the longshoreman’s § 905(b) action against the shipowner. Thus, we take the Claimants’ argument that Seaboard was in the best position to prevent the injuries arising from their stevedoring activities as additional support for the proposition that Seaboard should have been held to a stevedore's standard of care in the § 905(b) action. Again however, the Claimants did not raise this argument in this way.

. The Claimants do not challenge the remaining bases for the final judgment in favor of Seaboard, and this ruling does not disturb that judgment.