# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 2, 2013

No. 12-30714

Lyle W. Cayce
Clerk

HALEIGH JANEE MCBRIDE, individually & on behalf of I.M.S.,

Plaintiff - Appellant,

v.

ESTIS WELL SERVICE, L.L.C.,

Defendant - Appellee.

_____

BRIAN J. SUIRE,

Plaintiff - Appellant,

v.

ESTIS WELL SERVICE, L.L.C.

Defendant - Appellee.

_____

SAUL C. TOUCHET,

Plaintiff - Appellant,

v.

ESTIS WELL SERVICE, L.L.C.

Defendant - Appellee.

No. 12-30714

―――――――――

Appeal from the United States District Court
for the Western District of Louisiana

―――――――――

Before STEWART, Chief Judge, and BARKSDALE and HIGGINSON, Circuit
Judges.

HIGGINSON, Circuit Judge:

The principal question presented by this case is whether seamen may recover punitive damages for their employer's willful and wanton breach of the general maritime law duty to provide a seaworthy vessel. Answering in the affirmative, we REVERSE and REMAND for further proceedings.

## FACTS AND PROCEEDINGS

The consolidated cases arise out of an accident aboard Estis Rig 23, a barge supporting a truck-mounted drilling rig operating in Bayou Sorrell, a navigable waterway in Iberville Parish, Louisiana. As crew members were attempting to straighten the monkey board—the catwalk extending from the derrick—which had twisted the previous night, the derrick pipe shifted, causing the rig and truck to topple over. One crew member, Skye Sonnier, was fatally pinned between the derrick and mud tank, and three others, Saul Touchet, Brian Suire, and Joshua Bourque, have alleged injuries. At the time of the incident, Estis Well Service, L.L.C. ("Estis") owned and operated Rig 23, and employed Sonnier, Touchet, Suire, and Bourque (collectively, the "crew members").

Haleigh McBride, individually, on behalf of Sonnier's minor child, and as administratrix of Sonnier's estate, filed suit against Estis, stating causes of action for unseaworthiness under general maritime law and negligence under the Jones Act and seeking compensatory as well as "punitive and/or exemplary"

2

No. 12-30714

damages.[1] The other crew members filed separate actions against Estis alleging the same causes of action and requesting the same relief. Upon the crew members' motion, the cases were consolidated into a single action over which a Magistrate Judge presided with the parties' consent.[2] Estis moved to dismiss the claims for punitive damages, arguing that punitive damages are not an available remedy for unseaworthiness or Jones Act negligence as a matter of law. Treating it as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the Magistrate Judge granted the motion, and correspondingly entered judgment dismissing all claims for punitive damages. Recognizing that the issues presented were "the subject of national debate with no clear consensus," the court granted plaintiffs' motion to certify the judgment for immediate appeal under 28 U.S.C. § 1292(b). This interlocutory appeal followed.

## STANDARD OF REVIEW

Whether punitive damages are an available remedy under maritime law is a question of law reviewed de novo. *See Atl. Sounding Co., Inc. v. Townsend*, 496 F.3d 1282, 1284 (11th Cir. 2007) (citations omitted), *aff'd*, 557 U.S. 404 (2009).

## BACKGROUND

### I.    Sources of maritime law

There are two primary sources of federal maritime law: common law developed by federal courts exercising the maritime authority conferred on them by the Admiralty Clause of the Constitution ("general maritime law"), and statutory law enacted by Congress exercising its authority under the Admiralty

---

[1] "Punitive damages" and "exemplary damages" are synonymous.  They reflect two principal purposes of such damages: to *punish* the wrongdoer and thereby make an *example* of him in the hopes that doing so will deter him and others from wrongdoing. David W. Robertson, *Punitive Damages in American Maritime Law*, 28 J. MAR. L. & COM. 73, 82–83 (1997).  For ease of reference, we refer to all such damages as "punitive damages."

[2] In March 2012, Bourque settled his claims against Estis.

Clause and the Commerce Clause ("statutory maritime law"). *See* U.S. CONST. art. III, § 2, cl. 1 (extending the judicial power of the United States "to all [c]ases of admiralty and maritime [j]urisdiction"); *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 360–61 (1959) (explaining that the Admiralty Clause "empowered the federal courts in their exercise of the admiralty and maritime jurisdiction which had been conferred on them, to draw on the substantive law 'inherent in the admiralty and maritime jurisdiction,' [] to continue the development of this law within constitutional limits[,]" and "empowered Congress to revise and supplement the maritime law within the limits of the Constitution") (citation omitted).[3]

## II.    Causes of action under maritime law

Traditionally, general maritime law afforded ill and injured seamen two causes of action against shipowners and employers.  If a seaman became ill or injured while in the service of the ship, the seaman's employer and the ship's owner owed the seaman room and board ("maintenance") and medical care ("cure") without regard to fault, and, if not provided, the seaman had a claim against them for "maintenance and cure."  If a seaman was injured by a ship's operational unfitness, the seaman had a cause of action for "unseaworthiness." General maritime law did not provide seamen with a separate cause of action for personal injury resulting from employer negligence, *The Osceola*, 189 U.S. 158, 175 (1903), nor did it permit wrongful death or survival claims on behalf of seamen killed during the course of their employment, *The Harrisburg*, 119 U.S. 199, 204–14 (1886), *overruled by Moragne v. States Marine Lines, Inc.*, 398 U.S. 375 (1970).

---

[3] For a discussion of the division of maritime rulemaking authority between Congress and the federal courts, see David W. Robertson, *Our High Court of Admiralty and Its Sometimes Peculiar Relationship With Congress*, 55 St. Louis U. L.J. 491, 494–513 (2011).

No. 12-30714

To remedy those perceived gaps in general maritime law, which, until then, had been filled by a patchwork of state wrongful death statutes,[4] Congress in 1920 enacted the Jones Act and the Death on the High Seas Act ("DOHSA"), which created causes of action for employer negligence in navigable waters and on the high seas, respectively, and authorized survival and wrongful death remedies. *See* 46 U.S.C. § 688 (1920) (codified as amended at 46 U.S.C. § 30104 (2006));[5] 46 U.S.C. §§ 761–68 (1920) (codified as amended at 46 U.S.C. §§ 30301–08 (2006)).[6] The Supreme Court has since recognized a parallel cause of action under general maritime law for employer negligence resulting in injury or death. *See Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 818–20 (2001) (citing *Moragne*, 398 U.S. at 409).

### III.   Punitive damages under maritime law

---

[4] "These statutes were often unwieldy and not designed to accommodate maritime claims; moreover, because they varied from state to state, the representatives of similarly situated deceased seamen might be awarded widely varying sums based on the fortuity of whether the accident occurred within or without the three-mile limit and, if it were within that limit, based on the laws of the particular state where the casualty occurred." *Ivy v. Security Barge Lines, Inc.*, 606 F.2d 524, 527 (5th Cir. 1979).

[5] The Jones Act provides, in pertinent part:
A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer. Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section.
46 U.S.C. § 30104.

[6] DOHSA provides, in pertinent part:
When the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States, the personal representative of the decedent may bring a civil action in admiralty against the person or vessel responsible. The action shall be for the exclusive benefit of the decedent's spouse, parent, child, or dependent relative.
46 U.S.C. § 30302.

No. 12-30714

"Historically, punitive damages," though not always designated as such,[7] "have been available and awarded in general maritime actions." *Townsend*, 557 U.S. at 407; *see also id.* at 414 (citing as examples of early punitive damages awards *The City of Carlisle*, 39 F. 807, 817 (D. Or. 1889) (adding $1,000 to plaintiff's damages award for "gross neglect and cruel maltreatment"), and *The Troop*, 118 F. 769, 770–771, 773 (D. Wash. 1902) (concluding that $4,000 was a reasonable award because the captain's "failure to observe the dictates of humanity" and obtain prompt medical care for an injured seaman constituted a "monstrous wrong")). In the early nineteenth century, Justice Story spoke of maritime punitive damages as "the proper punishment which belongs to [] lawless misconduct." *The Amiable Nancy*, 16 U.S. (3 Wheat.) 546, 558 (1818).

Over the next century and a half, the availability of punitive damages for unseaworthiness claims arising under general maritime law was largely unquestioned. In *Complaint of Merry Shipping, Inc.*, 650 F.2d 622, 623 (5th Cir. Unit B Jul. 1981), our court confirmed the prevailing view that "punitive damages may be recovered under general maritime law upon a showing of willful and wanton misconduct by the shipowner in the creation or maintenance of unseaworthy conditions." Our court based its holding on the historical availability of punitive damages under general maritime law, the public policy interests in punishing willful violators of maritime law and deterring them from committing future violations, and the uniformity of contemporary courts on the issue. *Id.* at 624–26.[8] After *Merry Shipping*, the Ninth and Eleventh Circuits followed suit.

---

[7] *See Townsend*, 557 U.S. at 414 n.3 (citing awards of punitive damages in early maritime cases and pointing out that "[a]lthough these cases do not refer to 'punitive' or 'exemplary' damages, scholars have characterized the awards authorized by these decisions as such"); Robertson, *Punitive Damages in American Maritime Law*, *supra*, at 88 (noting that eighteenth and nineteenth century maritime courts used a variety of terms to designate damages intended to punish and deter).

[8] At the time *Merry Shipping* was decided, the Second and Sixth Circuits had held that punitive damages were available in unseaworthiness actions, and no circuit court had ruled

*See Evich v. Morris*, 819 F.2d 256, 258 (9th Cir. 1987) ("Punitive damages are available under general maritime law for claims of unseaworthiness.") (citations omitted); *Self v. Great Lakes Dredge & Dock Co.*, 832 F.2d 1540, 1550 (11th Cir. 1987) ("Punitive damages should be available in cases where the shipowner willfully violated the duty to maintain a safe and seaworthy ship . . . .").

In *Miles v. Melrose*, 882 F.2d 976, 989 (5th Cir. 1989) (citations omitted), we reiterated that "[p]unitive damages are recoverable under the general maritime law 'upon a showing of willful and wanton misconduct by the shipowner' in failing to provide a seaworthy vessel[,]" but held, for the first time, that loss of society damages were not available to nondependent parents in a general maritime cause of action for the wrongful death of a Jones Act seaman.[9] Judge Rubin, speaking for the court, was guided by the "twin aims of maritime law": "achieving uniformity in the exercise of admiralty jurisdiction and providing special solicitude to seamen." *Id.* at 987.  It would be anomalous, the court reasoned, if a wrongful death claimant were permitted to recover for loss of society damages under general maritime law even though the claimant was barred from recovering such damages under statutory maritime law. *Id.* at 987–88.  And the goal of providing special solicitude to seamen, the wards of

---

otherwise. *See In re Marine Sulphur Queen*, 460 F.2d 89, 105 (2d Cir. 1972) (noting, in the unseaworthiness context, that "the award of punitive damages is discretionary with the trial court[,]" and "[a] condition precedent to awarding them is a showing by the plaintiffs that the defendant was guilty of gross negligence, or actual malice or criminal indifference which is the equivalent of reckless and wanton misconduct") (citations omitted); *U.S. Steel Corp. v. Fuhrman*, 407 F.2d 1143, 1148 (6th Cir. 1969) (noting that punitive damages are recoverable against a ship owner for the actions of a master if "the owner authorized or ratified the acts of the master" or "the owner was reckless in employing him") (citations omitted).

[9] A "Jones Act seaman" is "a master or member of a crew of any vessel," *Stewart v. Dutra Const. Co.*, 543 U.S. 481, 488 (2005) (internal quotation marks omitted) (citations omitted), as distinguished from a "*Sieracki* seaman," which refers to a longshoreman or harborworker who is injured on a vessel while performing traditional work of a seaman and, by virtue of *Seas Shipping Co. v. Sieracki*, 328 U.S. 85 (1946), may bring a claim for unseaworthiness, *Burks v. Am. River Transp. Co.*, 679 F.2d 69, 71, 71 n.1 (5th Cir. 1982), *abrogated on other grounds by Lozman v. City of Riviera Beach, Fla.*, 133 S. Ct. 735 (2013).

admiralty, "would not be furthered in any meaningful way by allowing nondependent parents to recover for loss of society." *Id.* at 988; *see also id.* ("Admiralty cannot provide the parents solicitude at a voyage's outset when their right to recover for loss of society is dependent on the fortuity that the deaths occur in territorial waters and are caused by unseaworthiness." (quoting *Sistrunk v. Circle Bar Drilling Co.*, 770 F.2d 455, 460 (5th Cir. 1985)) (emphases omitted).

The Supreme Court affirmed in a decision most significant for its announcement of a new age of maritime law:

> We no longer live in an era when seamen and their loved ones must look primarily to the courts as a source of substantive legal protection from injury and death; Congress and the States have legislated extensively in these areas. In this era, an admiralty court should look primarily to these legislative enactments for policy guidance. We may supplement these statutory remedies where doing so would achieve the uniform vindication of such policies consistent with our constitutional mandate, but we must also keep strictly within the limits imposed by Congress. Congress retains superior authority in these matters, and an admiralty court must be vigilant not to overstep the well-considered boundaries imposed by federal legislation. These statutes both direct and delimit our actions.

*Miles v. Apex Marine Corp. ("Miles")*, 498 U.S. 19, 27 (1990); *see also id.* at 36 ("We sail in occupied waters. Maritime tort law is now dominated by federal statute, and we are not free to expand remedies at will simply because it might work to the benefit of seamen and those dependent upon them."). Analyzing the issue presented with this guiding principle in mind, the Court reasoned that because DOHSA, by its terms, limits damages recovery to "pecuniary loss," *id.* at 31 (citation omitted), and the same limitation had been incorporated into the Jones Act, *id.* at 32,[10] non-pecuniary damages, such as loss of society damages,

---

[10] This pecuniary-loss limitation arose out of the Jones Act's incorporation of the remedial provisions of the Federal Employers' Liability Act ("FELA"), 46 U.S.C. § 30104

should not be recoverable in a parallel cause of action for the wrongful death of a Jones Act seaman under general maritime law, *id.* at 33. "It would be inconsistent with our place in the constitutional scheme," the Court in *Miles* concluded, "were we to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence." *Id.* at 32–33.

*Miles* addressed the availability of loss of society damages to non-seamen under general maritime law, not punitive damages, but the general principle appearing to underlie its analysis—that if a category of damages is unavailable under a maritime cause of action established by statute, it is similarly unavailable for a parallel claim brought under general maritime law—began to be extended by lower courts to cover punitive damages claims by seamen. *See, e.g.*, *Miller v. Am. President Lines, Ltd.*, 989 F.2d 1450, 1454–59 (6th Cir. 1993).

Similarly applying the "*Miles* uniformity principle," as it came to be known, our court, sitting en banc, held that *Miles* "effectively overruled" *Merry Shipping*, concluding that "punitive damages [are not] available in cases of willful nonpayment of maintenance and cure under the general maritime law." *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1513 (5th Cir. 1995) (en banc), *abrogated by Atl. Sounding Co. v. Townsend*, 557 U.S. 404 (2009). The court reasoned that because punitive damages, which are "rightfully classified as non-pecuniary," are not an available remedy for personal injury to a seaman under the Jones Act, they likewise are not an available remedy for personal injury to a seaman, including injury resulting from a maintenance and cure

---

("Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section."), which, at the time the Jones Act was enacted, had been interpreted by the Supreme Court to limit recovery to compensation for "pecuniary" damages, *Mich. Cent. R.R. Co. v. Vreeland*, 227 U.S. 59, 68 (1913) ("[FELA limits] liability [to] the loss and damage sustained by relatives dependent upon the decedent. It is therefore a liability for the pecuniary damage resulting to them, and for that only.").

violation, under the general maritime law. *Id.* at 1506–07, 1510–12.[11] The court in *Guevara* did not address the availability, post-*Miles*, of punitive damages in unseaworthiness actions; it restricted its discussion to the availability of such damages in the maintenance and cure context. *Id.* at 1499. But it was perceived by some to "portend[] the disappearance of punitive damages from the entire body of maritime law." Robertson, *Punitive Damages in American Maritime Law*, *supra*, at 154 (collecting cases).

Momentum in that direction was sea-tossed by *Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 424 (2009), which explicitly abrogated *Guevara* and restored the availability of punitive damages for maintenance and cure claims under general maritime law. The Supreme Court reasoned that "punitive damages have long been an accepted remedy under general maritime law," including for egregious maintenance and cure violations, and concluded, contrary to *Guevara*, that "nothing in the Jones Act altered this understanding." *Id.* at 424. The Jones Act, the Court reminded, "created a statutory cause of action for negligence, but it did not eliminate pre-existing remedies available to seamen for the separate common-law cause of action based on a seaman's right to maintenance and cure." *Id.* at 415–16. "Its purpose was to enlarge [seamen's] protection, not to narrow it." *Id.* at 417 (citations omitted). Indeed, the Court noted, the Jones Act specifically preserved the seaman's right to "elect" between the remedies provided by the Jones Act and those recoverable under pre-existing general maritime law; "[i]f the Jones Act had been the only remaining remedy

---

[11] The court in *Guevara* went on to hold, in addition, that punitive damages are not available for the willful and wanton refusal to pay maintenance and cure even when personal injury does not result. *Id.* at 1512. The court noted that it was not constrained by the *Miles* uniformity principle in its second inquiry because there was no overlap between statutory and general maritime law: neither the Jones Act nor DOHSA, as does the general maritime law, provides for a cause of action for maintenance and cure not resulting in personal injury. *Id.* The court nevertheless exercised its maritime authority to bar punitive damages in such actions as a matter of policy. *Id.* at 1513.

available to injured seamen, there would have been no election to make." *Id.* at 416. As further evidence that punitive damages "remain[ed] available in maintenance and cure actions after the [Jones] Act's passage," the Court pointed out that in *Vaughan v. Atkinson*, 369 U.S. 527, 529–31 (1962), it "permitted the recovery of attorneys' fees [as a punitive sanction] for the 'callous' and 'willful and persistent' refusal to pay maintenance and cure." *Townsend*, 557 U.S. at 417.

The Supreme Court clarified that its interpretation of *Miles* did *not* represent an " 'abrup[t]' change of course." *Id.* at 422 n.8, 418–22. Rather, the Court explained, reliance on the *Miles* uniformity principle to bar punitive damages recovery under general maritime causes of action would read *Miles* "far too broad[ly]." *Id.* at 418–19. *Miles*, which addressed loss of society damages in maritime wrongful death actions, presented an issue of a different nature than the one presented in *Townsend*, which addressed punitive damages in the maintenance and cure setting:

> Unlike the situation presented in *Miles*, both the general maritime cause of action (maintenance and cure) and the remedy (punitive damages) were well established before the passage of the Jones Act. Also unlike the facts presented by *Miles*, the Jones Act does not address maintenance and cure or its remedy. It is therefore possible to adhere to the traditional understanding of maritime actions and remedies without abridging or violating the Jones Act; unlike wrongful-death actions, this traditional understanding is not a matter to which "Congress has spoken directly." Indeed, the *Miles* Court itself acknowledged that "[t]he Jones Act evinces no general hostility to recovery under maritime law," and noted that statutory remedy limitations "would not necessarily deter us, if recovery . . . were more consistent with the general principles of maritime tort law." The availability of punitive damages for maintenance and cure actions is entirely faithful to these "general principles of maritime tort law," and no statute casts doubt on their availability under general maritime law.

No. 12-30714

*Id.* at 420–21 (citations omitted).  Thus, it concluded more generally, "[t]he laudable quest for uniformity in admiralty does not require the narrowing of available damages to the lowest common denominator approved by Congress for distinct causes of action." *Id.* at 424.[12]

## DISCUSSION

The crux of this dispute lies in the parties' competing theories of statutory displacement of general maritime law.

The crew members read *Miles* and *Townsend* as providing, narrowly, that federal courts, in exercising their maritime lawmaking authority, cannot authorize a more expansive remedy for a general maritime cause of action than exists for a parallel statutory maritime cause of action if, at the time the statutory cause of action or remedy was enacted, the parallel cause of action or remedy did not exist under general maritime law. Applying that principle, they urge that punitive damages remain available as a remedy for the general maritime law cause of action for unseaworthiness because, like maintenance and

---

[12] This shift from *Miles* to *Townsend* was foreshadowed in *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008), which presented the issue of whether the Clean Water Act ("CWA") implicitly preempted maritime causes of action by fishermen, Alaska Natives, and others with property rights in the resources of the ocean. 554 U.S. at 484–89.  The Court concluded that the CWA did not preempt plaintiffs' claims, reasoning: "we find it too hard to conclude that a statute expressly geared to protecting 'water,' 'shorelines,' and 'natural resources' was intended to eliminate *sub silentio* oil companies' common law duties to refrain from injuring the bodies and livelihoods of private individuals." *Id.* at 488–89.  In so ruling, the Court sounded a different tune on statutory displacement of general maritime law:

> To be sure, "Congress retains superior authority in these matters," and "[i]n this era, an admiralty court should look primarily to these legislative enactments for policy guidance." *Miles v. Apex Marine Corp.*, 498 U.S. 19, 27 (1990). But we may not slough off our responsibilities for common law remedies because Congress has not made a first move, and the absence of federal legislation constraining punitive damages does not imply a congressional decision that there should be no quantified rule.

*Id.* at 508 n.21 (citation omitted).  This sentiment was echoed in *Townsend*: "Although 'Congress . . . is free to say this much and no more,' *Miles*, 498 U.S., at 24, 111 S. Ct. 317 (internal quotation marks omitted), we will not attribute words to Congress that it has not written." *Townsend*, 557 U.S. at 424.

cure, unseaworthiness was established as a cause of action before the passage of the Jones Act, courts traditionally awarded punitive damages under general maritime law, and the Jones Act does not address unseaworthiness or purport to limit its remedies.

Estis reads those cases as providing, more broadly, that where claimants seek redress for a type of harm compensable under both general and statutory maritime law, they are limited in their recovery to the class of damages authorized by the Jones Act and DOHSA. That is, punitive damages are available only where there is no remedial overlap between general and statutory maritime claims. In its view, punitive damages were available in *Townsend*, but not *Miles*, because the *Miles* plaintiffs sought redress for physical injury and wrongful death, harms compensable under both general and statutory maritime law, whereas the *Townsend* plaintiffs sought redress for harm caused by wrongful deprivation of maintenance and cure that did not result in physical injury, a type of harm compensable under general maritime law but not under statutory maritime law, which does not separately provide for a cause of action for maintenance and cure or a remedy for its deprivation. Applying that reasoning here, Estis argues that because the crew members seek redress for wrongful death and personal injuries arising from a maritime accident—types of harm compensable under both general and statutory maritime law—and punitive damages are not available under statutory maritime law, punitive damages are not available in the present action.

To the extent that its focus is on the case's factual setting and not the specific cause of action alleged, Estis's proposed test for determining whether the *Miles* uniformity principle limits the damages recoverable in a maritime case mirrors the one previously adopted by the en banc court in *Guevara*:

> In order to decide whether (and how) *Miles* applies to a case, a court
> must first evaluate the factual setting of the case and determine

13

what statutory remedial measures, if any, apply in that context. If the situation is covered by a statute like the Jones Act or DOHSA, and the statute informs and limits the available damages, the statute directs and delimits the recovery available under the general maritime law as well.

59 F.3d at 1506 (emphasis omitted). Estis highlights this congruity and argues that although *Guevara*'s holding that punitive damages are unavailable in actions for maintenance and cure was overruled by *Townsend*, its guidance on how to apply the *Miles* uniformity principle remains intact.

We disagree. *Townsend* abrogated *Guevara*'s holding because of *Guevara*'s interpretation of *Miles*, not in spite of it. The petitioners in *Townsend* urged the Supreme Court to adopt the factual setting approach of *Guevara*, but the Court in *Townsend* declared that reading was "far too broad." 557 U.S. at 419. That approach, the Court went on, "would give greater pre-emptive effect to the Act than is required by its text, *Miles*, or any of this Court's other decisions interpreting the statute." *Id.* at 424–25. Indeed, the Court noted, it had already rejected that view in *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 818 (2001), an intervening case holding that a wrongful death remedy is available under general maritime law for the death of a harborworker attributable to negligence, even though "neither the Jones Act (which applies only to seamen) nor DOHSA (which does not cover territorial waters) provided such a remedy." *Townsend*, 557 U.S. at 421 (citations omitted). The broader point made in *Townsend*, which we heed today, is that "[t]he laudable quest for uniformity in admiralty does not require the narrowing of available damages to the lowest common denominator approved by Congress for distinct causes of action." *Id.* at 424.

To give effect to that principle, *Townsend* established a straightforward rule going forward: if a general maritime law cause of action and remedy were established before the passage of the Jones Act, and the Jones Act did not address

No. 12-30714

that cause of action or remedy, then that remedy remains available under that cause of action unless and until Congress intercedes.[13] Estis does not dispute that the rule's premises are satisfied in this case: the cause of action (unseaworthiness) and the remedy (punitive damages) were both established before the passage of the Jones Act, and that statute did not address unseaworthiness or its remedies.[14] Seeking to avoid the conclusion that follows, Estis attempts to distinguish *Townsend* in two ways.

Estis first attempts to distinguish *Townsend* on the ground that it involved a maintenance and cure claim, as opposed to an unseaworthiness claim. It is true that unseaworthiness claims are more closely related to negligence claims than they are to maintenance and cure claims. But as we noted in *Guevara*—the

---

[13] *Id.* at 414–15 ("The settled legal principles discussed above establish three points central to resolving this case. First, punitive damages have long been available at common law. Second, the common-law tradition of punitive damages extends to maritime claims. And third, there is no evidence that claims for maintenance and cure were excluded from this general admiralty rule. Instead, the pre-Jones Act evidence indicates that punitive damages remain available for such claims under the appropriate factual circumstances. As a result, respondent is entitled to pursue punitive damages unless Congress has enacted legislation departing from this common-law understanding. As explained below, it has not.") (footnote omitted); *id.* at 420 ("Unlike the situation presented in *Miles*, both the general maritime cause of action (maintenance and cure) and the remedy (punitive damages) were well established before the passage of the Jones Act. Also unlike the facts presented by *Miles*, the Jones Act does not address maintenance and cure or its remedy. It is therefore possible to adhere to the traditional understanding of maritime actions and remedies without abridging or violating the Jones Act.") (citations and footnote omitted); *id.* at 424 ("Because punitive damages have long been an accepted remedy under general maritime law, and because nothing in the Jones Act altered this understanding, such damages for the willful and wanton disregard of the maintenance and cure obligation should remain available in the appropriate case as a matter of general maritime law.").

[14] Additionally, we note that Estis does not ask us to bar punitive damages in unseaworthiness cases as a matter of policy. *E.g.*, *Guevara*, 59 F.3d at 1512–13. Accordingly, we will not reach this issue. *See United States v. Delgado*, 672 F.3d 320, 329 n.6 (5th Cir. 2012) (citations omitted); *see also Townsend*, 557 U.S. at 424 n.11 ("Although this Court has recognized that it may change maritime law in its operation as an admiralty court, petitioners have not asked the Court to do so in this case or pointed to any serious anomalies, with respect to the Jones Act or otherwise, that our holding may create. . . . We do not decide th[is] issue[].") (citation omitted).

primary case upon which Estis relies—the displacement analysis for unseaworthiness claims is "wholly applicable to maintenance and cure cases as well." *Guevara*, 59 F.3d at 1504. Indeed, if the decisive paragraph in *Townsend* were amended by replacing "maintenance and cure" with "unseaworthiness," it would retain its persuasive force:

> Unlike the situation presented in *Miles*, both the general maritime cause of action ([unseaworthiness]) and the remedy (punitive damages) were well established before the passage of the Jones Act. Also unlike the facts presented by *Miles*, the Jones Act does not address [unseaworthiness] or its remedy. It is therefore possible to adhere to the traditional understanding of maritime actions and remedies without abridging or violating the Jones Act; unlike wrongful-death actions, this traditional understanding is not a matter to which "Congress has spoken directly." Indeed, the *Miles* Court itself acknowledged that "[t]he Jones Act evinces no general hostility to recovery under maritime law," and noted that statutory remedy limitations "would not necessarily deter us, if recovery . . . were more consistent with the general principles of maritime tort law." The availability of punitive damages for [unseaworthiness] actions is entirely faithful to these "general principles of maritime tort law," and no statute casts doubt on their availability under general maritime law.

*Townsend*, 557 U.S. at 420–21 (citations omitted).

Estis argues also that the "chronological" framework announced in *Townsend* is inapt because of the evolution of claims of unseaworthiness. Unlike maintenance and cure, which has remained unchanged in substance for centuries, the claim of unseaworthiness has evolved over the years. Although it was well established before the passage of the Jones Act, it did not become a strict liability claim until 1944, *Mahnich v. Southern S.S. Co.*, 321 U.S. 96, 100 (1944), and was not available to seamen killed during the course of their employment until 1970, *Moragne*, 398 U.S. at 409.

We agree that this case differs from *Townsend* in that respect. That is, punitive damages for the willful violation of the duty to provide maintenance

and cure appear to have been available, if sparingly awarded, during the pre-Jones Act era. *See Townsend*, 557 U.S. at 414 (citing *The City of Carlisle*, 39 F. at 809, 817 and *The Troop*, 118 F. at 770–71, 773). It is less clear whether punitive damages were awarded for unseaworthiness violations during that period. The parties do not brief this point. This distinction, if factually supported, would change the inquiry: the question would not be whether the Jones Act was intended to displace existing remedies, but whether it was meant to foreclose future remedies. But the outcome would be the same.

Our task is not to reconstruct maritime law as it existed in 1920, but to assess whether Congress, in passing the Jones Act and DOHSA, intended to displace pre-existing maritime remedies or foreclose them going forward. *See Townsend*, 557 U.S. at 419–25. Let us assume for the sake of argument that maritime courts during the pre-Jones Act era had taken no position on the propriety of punitive damages in unseaworthiness actions; that Congress in 1920 was painting on a blank canvas. Had Congress "spoken directly" on the matter, then we would follow its guidance. *Townsend*, 557 U.S. at 420–21; *Miles*, 498 U.S. at 27, 32–33. But the Jones Act does not mention unseaworthiness or its remedies. 46 U.S.C. § 30104. And "a remedial omission in the Jones Act is not evidence of considered congressional policymaking that should command our adherence in analogous contexts." *Am. Export Lines, Inc. v. Alvez*, 446 U.S. 274, 283–84 (1980); *see also id.* at 282 ("Nor do we read the Jones Act as sweeping aside general maritime law remedies."). Similarly, "no intention appears that [DOHSA] ha[d] the effect of foreclosing any nonstatutory federal remedies that might be found appropriate to effectuate the policies of general maritime law." *Moragne*, 398 U.S. at 400. Given that "the absence of federal legislation constraining punitive damages does not imply a congressional decision that there should be no quantified rule," *Baker*, 554 U.S. at 508 n.21, it follows that the matter remained open after the Jones Act and DOHSA. We resolved it in

*Merry Shipping* when we held that punitive damages were an appropriate remedy to effectuate the policies of general maritime law, a view shared then and since by other circuit courts.

Estis goes on to argue that allowing seamen to recover punitive damages under general maritime law would create a number of anomalies. Though one acknowledged function of maritime courts is to reconcile anomalies that present themselves in the law, *e.g.*, *Moragne*, 398 U.S. at 395–409 (overruling *The Harrisburg*, 119 U.S. at 205 to remedy three maritime law anomalies), we perceive no anomalies arising from our holding.

Estis argues that our decision would allow plaintiffs to circumvent the pecuniary damages limitation in the Jones Act by pleading a claim for unseaworthiness. This is not an anomaly, as the Supreme Court has highlighted; it is a traditional feature of maritime law designed to protect seamen, the wards of admiralty.[15] By design, seamen have always had the "right to choose among overlapping statutory and common-law remedies" for their injuries. *Townsend*, 557 U.S. at 423 (citation omitted); *see also Cortes v. Baltimore Insular Lines*, 287 U.S. 367, 374–75 (1932) (A seaman's "cause of action for personal injury created by the [Jones Act] may have overlapped his cause of action for breach of the maritime duty of maintenance and cure, just as it may have overlapped his cause of action for injury caused through an unseaworthy ship. In such circumstances it was his privilege, in so far as the causes of action covered the same ground, to sue indifferently on any one of them.") (citations omitted); *Hlodan v. Ohio Barge Line, Inc.*, 611 F.2d 71, 75 (5th

---

[15] Seamen have long been characterized as "wards of admiralty" deserving special protection under maritime law. *See, e.g.*, *Townsend*, 557 U.S. at 417 (noting that seamen are "peculiarly the wards of admiralty"); *Robertson v. Baldwin*, 165 U.S. 275, 287 (1897) ("The ancient characterization of seamen as 'wards of admiralty' is even more accurate now than it was formerly."); *see also* David W. Robertson, *Punitive Damages in U.S. Maritime Law:* Miles*, Baker*, and* Townsend, 70 La. L. Rev. 463, 485 n.147 (2010) (collecting cases).

Cir. 1980) ("[A] Jones Act claim may be joined with a wrongful death claim for nonpecuniary damages based on general maritime law, where the incident does not arise on the high seas, and that nonpecuniary damages may be recovered under the unseaworthiness claim.") (citations omitted).  That a violation of the unseaworthiness duty "may also give rise to a Jones Act claim is significant only in that it requires admiralty courts to ensure against double recovery." *Townsend*, 557 U.S. at 423 n.10 (citation omitted).

Estis argues, similarly, that it would be anomalous for the law to allow different remedies for what amounts to the same cause of action.   Though they are similar, Jones Act negligence and unseaworthiness are "separate and distinct" claims with different elements and standards of causation. *Chisholm v. Sabine Towing & Transp. Co., Inc.*, 679 F.2d 60, 62 (5th Cir. 1982) (citation omitted); *Ferrara v. A. & V. Fishing, Inc.*, 99 F.3d 449, 452 (1st Cir. 1996).  It is true that plaintiffs often bring claims for both causes of action, and that the same act that results in liability for one will often result in liability for the other. But that is a common feature of the law.

Finally, Estis argues that it would make little sense to permit the recovery of punitive damages for unseaworthiness, which imposes liability without regard to fault, while denying such relief on a Jones Act claim, which requires a finding of negligence. *See Merry Shipping*, 650 F.2d at 626. This argument overlooks that punitive damages recovery always requires a finding of willful and wanton conduct, whether the cause of action is for maintenance and cure or unseaworthiness. *See id.* Punitive damages differ in that way from other types of non-pecuniary damages, such as the loss of society damages addressed in *Miles*.  In light of that distinction, we previously have rejected this argument against allowing punitive damages recovery under general maritime law. *Id.* ("It does not follow . . . that if punitive damages are not allowed under the Jones Act, they should also not be allowed under general maritime law [because] recovery

No. 12-30714

of punitive damages is restricted to where there is willful and wanton misconduct, reflecting a reckless disregard for the safety of the crew, a much higher standard of culpability than that required for Jones Act liability."). The central concern of *Miles*—that it would be inappropriate to "sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence"—thus, is not present here. 498 U.S. at 32–33.

## CONCLUSION

Like maintenance and cure, unseaworthiness was established as a general maritime claim before the passage of the Jones Act, punitive damages were available under general maritime law, and the Jones Act does not address unseaworthiness or limit its remedies. We conclude, therefore, that punitive damages remain available to seamen as a remedy for the general maritime law claim of unseaworthiness. *See Townsend*, 557 U.S. 404.[16] We REVERSE and REMAND for further proceedings.

---

[16] Having so concluded, we decline to revisit whether punitive damages are available to seamen bringing claims for negligence under the Jones Act. *See id.* at 424 n.12 (declining to decide whether punitive damages are available to a seaman in a cause of action for negligence under the Jones Act after ruling that such damages are available to a seaman in a cause of action for maintenance and cure).